January Nobles, *Appellant,* v. Charlotte J. L'Engle, individually and as Executrix of the Will of Francis F. L'Engle, deceased, and Claude L'Engle, individually and as Trustee for Frank Fatio L'Engle, under the Will of Francis F. L'Engle, deceased, *Appellees.*

Specific Performance—Laches—Pleading in Equity—Material Averment in Answer That Is Disproved by the Complainant Destroys the Effectiveness of the Entire Answer as Evidence.

1. Where only two years have elapsed since a complainant in a bill for specific performance was wrongfully ousted from the possession of the premises in controversy, and there has been no material change in the status of the property or in its value, or of the parties interested, and where the contract of purchase has over sixty years to run, there is no such laches as would debar the complainant from specific performance.

2. An answer in equity contradicted in a material point loses all weight as evidence, and serves the purpose only of a pleading in the cause.

This case was decided by the court En Banc.

Appeal from the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*Cockrell & Cockrell* and *J. W. Archibald,* for Appellant;

*Geo. U. Walker & Son,* for Appellees.

Taylor, J.—The appellant as complainant below filed his bill in equity in the circuit court of Duval county on

the 23rd day of June, 1905, against the appellees as defendants below for specific performance of two contracts for the conveyance of two lots located in the city of Jacksonville, and for an accounting. The said bill, omitting its formal parts alleges as follows

1. That said Francis F. L'Engle, being then and there seized and possessed of the lands therein described, executed under his hand and seal to your orator in the presence of witnesses thereunto subscribing their names as such a certain agreement in writing, on or about, to-wit: the first day of February, A. D., 1884, by the terms of which agreement said Francis F. L'Engle leased to your orator that certain tract or parcel of land in the county of Duval, and State of Florida, described to-wit: as fractional lot five in block one hundred and ninety-eight, La Villa, a sub-division of Jacksonville, for the period of ninety-nine years, upon consideration, to-wit: of an initial payment of five dollars and the payment thereafter four times in each year of the sum of five dollars, it being further covenanted in said agreement by said Francis F. L'Engle for himself and his legal representatives that upon the faithful performance by your orator of those holding through him of the conditions of said agreement and the payment at any time within said period of ninety-nine years aforesaid of the sum of three hundred dollars, he, or they, would execute and deliver to your orator or those holding through him a good title in fee to the land described in said agreement.

2. That your orator in pursuance of said agreement made the initial payment of five dollars as aforesaid, and thereupon took possession of the land embraced in said agreement as above described; that thereafter and until about, to-wit: June 3, A. D., 1894, he paid all and every the sums due for rent and a portion of the principal sum of three hundred dollars aforesaid; that on or about, to-

wit: June 3, A. D., 1894, he paid the remaining sum due upon said principal sum of three hundred dollars to the said Francis F. L'Engle, who then and there received from your orator said sum as the payment in full of the purchase money provided for in said agreement, who then and there promised to execute and deliver to your orator in accordance with said written agreement a good title in fee for the land described therein; and your orator thereupon delivered up to him, the said Francis F. L'Engle, said written agreement the surrender of which was the predicate for the making of such deed as aforesaid; and the said written agreement was so surrendered for no other purpose than as a predicate for the consummated deed there and then to be executed in the completion of the contract as provided therein.

3. That said Francis F. L'Engle was a resident of the county aforesaid at the time of his death and had been for a long time prior thereto; that said Francis F. L'Engle died in said county, and State in the month of August, 1899; that up to the time of his death and for a long time prior thereto said Francis F. L' Engle was an attorney at law in said city and engaged in the practice of his profession; that your orator is an ex-slave of little education and without capacity to enter and keep accounts and made no effort to do so, but relied entirely upon said Francis F. L'Engle with regard to all business dealings had with him; that your orator is advised and believes, and upon such advice and belief avers, that said Francis F. L'Engle kept full and complete accounts of all transactions between your orator and himself in a book or books kept by him for that purpose.

4. That notwithstanding the surrender of said agreement as aforesaid and said promise of Francis F. L'Engle, neither he, during his lifetime, nor his legal representatives since his death, has executed or delivered to your

orator a deed for said land; that your orator is informed and advised and so believes that said written agreement and books of account severally are in the possession or control of said defendants to this bill or one of them; that your orator is entitled to a discovery of said agreement and the said accounts.

5.   That about ten years prior to the death of said Francis F. L'Engle your orator erected upon said premises three frame houses which he thereafter rented; that your orator from the date of said written agreement up to and until about, to-wit, January 1, A. D., 1903, was in the peaceable, quiet and exclusive possession of said land embraced in said agreement, and in the exclusive permanency and perception of the income, rents and profits thereof; that after the surrender of said written agreement and until said January 1, A. D., 1903, your orator exercised as the absolute equitable owner full control thereover.

6.   That said Francis F. L'Engle, being then and there seized and possessed of the lands therein described, executed under his hand and seal to the person therein named as grantee in the presence of witnesses thereunto subscribing their names as such a certain agreement in writing on the 29th day of January, A. D., 1896, which instrument was thereafter duly proven for record and recorded in the office of the clerk of the circuit court for the county aforesaid, a copy of which agreement is hereto annexed, marked Exhibit "A" and prayed to be made a part hereof, the original of which agreement will be produced at the hearing hereof.

7.   That said agreement was for a valuable consideration assigned to your orator by Annie K. Smith, the grantee therein on or about, to-wit: April 29th, A. D., 1896; that said Francis F. L'Engle recognized said agree-

ment and accepted during his lifetime from your orator as such assignee the rents accruing thereon.

8. That your orator has, since the date of said assignment and up to and until about, to-wit: the 1st day of January, A. D., 1903, been in the quiet, peaceable and exclusive possession of said land described in said written agreement so assigned, and in the exclusive permanency and perception of the income, rents and profits thereof; that your orator up to and until about, to-wit: said 1st day of January, A. D., 1903, has performed all and every the conditions, covenants and stipulations of said agreement so assigned to him and by such assignment, so recognized by said Francis F. L'Engle agreed to be performed up to and until that time; that during said time your orator has not only paid the sums due as rent upon said property but has paid a large portion of the principal sum of five hundred dollars, to-wit: about one hundred and fifty dollars.

9. That said Francis F. L'Engle duly executed his will which was after his death duly admitted to probate, a copy of which is annexed to this bill, marked Exhibit "B" and made part hereof for the purpose of showing what was devised therein and the relation of the parties to said devisees.

10. That on or about said 1st day of January, A. D., 1903, said Claude L'Engle, claiming to act as trustee under said Will for one Frank Fatio L'Engle, unlawfully dispossessed and wrongfully ousted your orator from the possession of the land embraced in each of the two agreements aforesaid.

11. That your orator so wrongfully ousted from possession of the lands so granted to him in the lease of about to-wit: February 1st, A. D., 1884, before about, to-wit: the 3rd day of June, A. D 1894, performed all and every the conditions on his part agreed to be performed in

accordance with said written agreement of about, to-wit: February 1st, A. D., 1884, and has since been since the completion of said final payment of the principal sum of three hundred dollars and the surrender of said agreement upon about, to-wit: June 3, A. D., 1894, entitled to a deed in fee for the said land; that at the time he was so dispossessed the houses upon said premises were rented, and the aggregate rental received therefrom amounted to about to-wit: twenty-four dollars per month; that said Claude L'Engle, so claiming as trustee for Frank Fatio L'Engle under said will of Francis F. L'Engle, deceased, has since that time collected a large sum from such rentals which your orator is advised and believes, and, so believing, avers said sum to be about, to-wit: Seven Hundred Dollars, and your orator avers that said Claude L'Engle, so claiming as trustee aforesaid, should be required to account for and pay to your orator all such sums received by him.

12. That your orator had, before being so unlawfully evicted therefrom, erected valuable improvements upon said land embraced in said agreement of January 29th, A. D., 1896; that said Claude L'Engle, claiming as trustee for Frank Fatio L'Engle, under said devise to him as such trustee under said Will has since said wrongful dispossession of your orator of said premises, been continuously receiving as such month by month, the rents, income and profits thereof, which as your orator is advised and believes and so states the fact to be has amounted to a large sum of money, the exact amount of which is to your orator unknown, but which upon information and belief he states to be quite sufficient to pay off and discharge not only the rent month by month provided for in said agreement, but also to pay off and discharge in full the purchase money for said premises, and upon the payment of which your orator was to receive by the terms of said agreement a

deed in fee to said premises; and in respect of which receipts, whether by the said F. F. L'Engle in his lifetime, or by his representatives under his will since he died your orator is entitled to a full accounting; that said defendants to this bill, though often requested by your orator, have heretofore and do now refuse to perform the terms of said agreement; that if any part of said principal or rental sum or sums shall be found upon an accounting had to be due by your orator, or if there is any condition, or conditions, yet unperformed which by the terms of said agreement is or are to be performed by your orator, he stands ready and willing and now offers, as he has heretofore been ready and willing and has offered to pay said sum or sums and to perform said condition or conditions.

To the end therefore that said several defendants be made parties defendant hereto, and answer, your orator prays as follows:

1.   That said defendants discover to this court the agreement of, about to-wit: February 1st, A. D., 1884, aforesaid; and all and every book or memorandum or books or memorandums in the possession or control of them or either of them bearing upon or in anywise relating to the two agreements aforesaid.

2.   That said defendant Charlotte J. L'Engle, as executrix of the will of Francis F. L'Engle, deceased, be decreed to execute and deliver to your orator a good and sufficient deed in fee simple to said parcels of land and each thereof.

3.   That said Claude L'Engle, individually, and as trustee for Frank Fatio L'Engle, be required to account for all sums received by him as incomes, rents and profits of said land described in said agreements; and that a full accounting be had of all sums paid in pursuance of said agreements during the lifetime of said Francis F. L'Engle and thereafter.

Nobles v. L'Engle *et al.*—Opinion of Court.

4. That if, upon an accounting had it appears that a balance is due your orator after payment of the rentals and principal sum of the agreement dated January 29th, A. D., 1896, said balance be decreed unto your orator.

5. That your orator may have such other and further, or other and further relief as the nature of this case requires."

To this bill the defendants demurred on the ground of the want of equity, and because of laches apparent upon the face of the bill.

This demurrer was overruled and the defendants jointly answered, in which the making and delivery of the agreements sought to be specifically performed are admitted as alleged, but the answer denies that said agreements have been complied with by the complainant as alleged in the bill; and on the part of the defendant Claude L'Engle said answer denies that he took wrongful possession of the premises involved from the complainant and alleges that the complainant finding himself unable to pay what he owed on said lots voluntarily surrendered them to him and voluntarily went with him and notified all the tenants on the premises to attorn to him, the said L'Engle.

A master was appointed to take and report the testimony, a large volume of which was taken and reported, and at the final hearing the chancellor, on the bill, answer and testimony reported, rendered a final decree finding the equities to be with the defendants and dismissing the bill at complainant's cost. This decree the complainant below brings here for review by appeal.

We think the court below erred in rendering the decree made. Insofar as the question of laches is concerned we do not think under the circumstances in proof that the complainant should be shut off from the relief he seeks thereby. According to the provisions of one of the contracts sought to be enforced made sometime during the

year 1884 or 1885 the vendor therein bound himself to make title at any time within ninety-nine years from its date upon compliance therewith by the lessee and vendee, and in the second contract also sought to be enforced the time for compliance runs for sixty-nine years from January 29th, 1896. The proofs further show that the complainant was in the uninterrupted possession of all of said premises until the year 1903 only about two years before the exhibition of his bill, and that during that time he sought to regain possession by actions of forcible entry and detainer. During that time of delay the proof does not show that there has been any material change either in the property or in its value, or in the status of the title or of the parties interested. We think further that the decided preponderance of the proofs show that the complainant has fully complied with his contract for the purchase of fractional lot five (5) of block one hundred and ninety-eight (198) in La Villa, a subdivision of the city of Jacksonville, and that he is entitled to a deed thereto from the defendant executrix of Francis F. L'Engle, deceased, as prayed in the bill; and that as to the second lot described as the north third of the west half of lot four (4) in said block one hundred and ninety-eight (198) in said La Villa, the proofs show that even if he has not paid the full amount of the agreed purchase price he has paid the major part thereof, and will be entitled to a deed therefor upon an adjustment of any balance that may be due thereon. We further think that the overwhelming preponderance of the proofs show that the complainant was wrongfully dispossessed of all of said premises by the defendant Claude L'Engle during the year 1903. That said Claude L'Engle has since that time wrongfully collected and appropriated the rents, income and profits of said lots, and that the complainant is entitled to an accurate accounting from him of such rents, income and profits,

and the complainant should be allowed to apply so much out of such rents collected by Claude L'Engle as may be sufficient to pay any balance due from him on his contract for the purchase of said north third of the west half of lot four (4) in block 198, La Villa.

The bill alleges that the complainant in the year 1903 was wrongfully dispossessed of said premises by the defendant Claude L'Engle. The answer of the latter denies this and alleges that the complainant at that time voluntarily surrendered to him the possession of said premises and of all further claim thereto, and went with him in person and introduced him to all the tenants occupying the premises and told each of them of his surrender of said premises and that they should from that time forward attorn to him, L'Engle. This denial and allegation in the defendant's answer was a most material issue in the case, and the proofs disprove it overwhelmingly. This being true the whole answer of the defendants lost its weight as evidence and became nothing more than a pleading in the cause. An answer contradicted in a material point loses all weight as evidence, and serves the purpose only of a pleading in the cause. Prout v. Roberts, 32 Ala. 427; Gunn v. Brantley, 21 Ala. 633; Countz v. Geiger, 1 Call. (Va.) 165; Phares v. Leachman, 20 Ala. 662.

The decree of the court below in said cause is hereby reversed and the cause remanded with directions for the entry of a decree adjudging the complainant to be entitled to a deed of conveyance from the defendant executrix of F. F. L'Engle, deceased, to fractional lot five in block one hundred and ninety-eight, La Villa, a sub-division of the city of Jacksonville, and ordering said deed to be executed and delivered, and requiring the defendant Claude L'Engle to surrender to the complainant the possession of all of said lots, and requiring him to account fully for all of the rents, income and profits of all of said lots since he took

possession thereof, and out of the amount found upon such accounting to be due from him that so much thereof as may be necessary be applied to the payment of any net balance due to the estate on the agreed purchase price of the lot described as the north third of the west half of lot four of said block one hundred and ninety-eight (198) and for the agreed rental thereof and taxes and water bills thereon, and if the amount found to be due from said defendant Claude L'Engle shall be found sufficient to pay such balances in full that the said defendant executrix be decreed to execute and deliver a deed to the complainant for said last described lot, but if such amount be not sufficient to pay all of said balances in full that then the complainant shall be decreed to pay by a short day such amount as may be lacking upon the payment of which the defendant executrix shall be required to execute a deed to the complainant to said last described lot, and if the amount found to be due by said defendant Claude L'Engle on such accounting be more than sufficient to pay all of said balances in full that a decree be rendered against him in favor of the complainant for any such overplus, or such overplus may be decreed to be applied, at the option of the complainant, towards the payment of any balance remaining due for the agreed purchase price and the agreed rents, taxes and water bills by the complainant's son John Nobles upon the lot described as the middle third of the west half of lot four of block one hundred and ninety-eight, La Villa, purchased by the complainant for and in the name of his said son John Nobles during the latter's minority. The costs of this appeal to be taxed against the appellees.

SHACKLEFORD and HOCKER, JJ., concur.

WHITFIELD, C. J., and PARKHILL, J., concur in reversing the decree.

COCKRELL, J., took no part, being disqualified.

WHITFIELD, C. J.

The aid of a court of equity to enforce the specific performance of a contract to convey real estate is not a matter of right, but it may be granted in sound judicial discretion governed by established principles of law designed for the administration of justice. Taylor v. Florida East Coast R. Co., 54 Fla. 635, 45 South. Rep. 574, 127 Am. St. Rep. 155; Asia v. Hiser, 38 Fla. 71, 20 South. Rep. 796; 10 Current Law, 1674.

If there is no adequate remedy at law and a contract is valid, definite, complete and capable of being mutually enforced with practical and just results, and the complainant is not in laches and is not estopped by judgment or by matters *in pais,* and there is no countervailing equity, the contract may be specifically enforced according to its valid purpose upon such equitable terms as the facts will warrant. When a complainant shows by proper allegations and a clear preponderance of unequivocal evidence that he is equitably entitled to the specific performance of a contract to convey land, and offers to do equity, and no laches or opposing equities appear, the contract should be specifically enforced that justice may be done. 10 Current Law 1690; 6 Current Law 1508.

By the law of the forum where the oath is not waived, the direct unequivocal responsive averments of an answer under oath to a bill in equity is evidence for the defendant, and is decisive unless overcome by something more than the testimony of one witness. Where a complainant in equity calls for an answer under oath, the competency of the defendant as a witness, and the credibility of the defendant's testimony as one witness are thereby conceded, and cannot ordinarily be questioned; but the pro-

bative force of the answer may be overcome by evidence. If a material responsive averment in an answer in equity is directly and unequivocally contradicted by more than one witness, it is then incumbent upon the defendant to sustain his averment by a preponderance of the evidence, either by the production of other evidence, or by the impeachment of opposing evidence or otherwise; and if the testimony that overcomes the effect of a sworn answer as evidence, is not itself overcome by impeachment or by other evidence, or by controlling circumstances in the case, the complainant should prevail on the preponderance of the evidence. When the probative force of a material averment in an answer under oath is overcome by proof, the answer is thereby diminished in force as evidence. Forsyth v. Clark, 3 Wend. (N. Y.) 637; Fant v. Miller, 17 Gratt. (Va.) 187; Broughton v. Coffer, 18 Gratt. (Va.) 184; 4 Elliott on Ev. Paragraph 3204; Ocala F. & M. W. v. Lester, 49 Fla. 347, 38 South. Rep. 56.

The credibility and weight of the evidence adduced in chancery causes are primarily for the determination of the chancellor, and the appellate court will resolve doubts in favor of the findings of the court below; but where the testimony is taken before an examiner and the credibility of witnesses is not directly put in issue, and the circumstances of the case do not discredit the witnesses, a finding against the apparent weight and the clear preponderance of the testimony should be reversed by the appellate court unless it appears from the whole record that no material error has been committed in the finding. Where a bill in chancery discloses equity for the complainant, and there is no countervailing equity, and material averments of the answer under oath are overcome by a preponderance of the testimony, and there is apparently credible evidence in support of all the material allegations of the bill, and the evidence does not preponderate

in favor of the defendant, a decree dismissing the bill should be reversed.

The complainant here sufficiently alleges an apparently valid and complete contract capable of mutual enforcement for its practical and just purposes, and offers to do equity. No laches or opposing equities appear in the pleadings. The credibility of the witnesses is not directly put in issue. The contract to convey and payments thereunder are admitted. Averments in the sworn answer to the effect that the defendant had forfeited or surrendered or abandoned his rights under the contract are material, and they have been directly contradicted by at least two witnesses whose credibility was not directly put in issue and whose testimony has not been met by other testimony in addition to the answer. There is apparently credible evidence in support of the equities alleged, and of the offer to do equity. No countervailing equities appear in the evidence and there are apparently no controlling circumstances in the case. The evidence does not clearly preponderate in favor of the defendant. It does not appear from the whole record that no material error has been committed. In this state of the case the decree dismissing the bill should be reversed and the cause remanded for further proceedings according to law.

PARKHILL, J., concurs.

Petition for rehearing in this case denied.